MATTER OF D—S—, INC.

In VISA PETITION Proceedings

A–12079891

*Decided by Regional Commissioner September 14, 1961*
*Approved by Assistant Commissioner October 5, 1961*

**First preference quota status—Orthopedic shoemaker.**

(1) Urgent need for the services of an orthopedic shoemaker and designer is not established where only two pairs of orthopedic shoes are repaired per month in petitioner's shoe repair shops which are primarily engaged in ordinary cobbling work.

(2) An "orthopedic shoemaker" occupies a highly skilled position which requires an apprenticeship of 3–5 years, followed by at least five years' experience in the making and repair of orthopedic shoes. An "orthopedic shoe repairman" is a lesser skilled trade for which any good shoe repairman can be trained in 3–4 years.

(3) Evidence that beneficiary possesses requisite skills qualifying him as an orthopedic shoemaker and designer held insufficient where there is no specific information concerning the nature of his apprenticeship and other training and whether his previous employers were exclusively engaged in orthopedic work, where his experience is vaguely defined in general terms, and where there is no showing regarding his knowledge of the English language and ability to translate prescriptions and terminology as used in the United States.

BEFORE THE REGIONAL COMMISSIONER
(September 14, 1961)

**DISCUSSION**: The District Director in New York City has certified this case to me for review.

The petitioner seeks first preference status under section 203(a)(1) of the Immigration and Nationality Act for the beneficiary, claiming that the beneficiary's services are urgently needed in the United States by virtue of his technical training, specialized experience or exceptional ability within the purview of that section.

The petitioner is a New York State corporation owning and operating 19 shoe repair shops in the New York City area. It has been engaged in this business for the past 35 years and presently grosses approximately three-fourths of a million dollars per year. The petitioner also claims to be engaged in the repair and the making of orthopedic shoes from doctors' prescriptions and speci-

467

fications. For this reason, the petitioner maintains that the regular shoe repairmen in their stores must also be experienced in orthopedic work and be able to work from a prescription.

While most of the petitioner's men are engaged in the repair of regular shoes, the petitioner maintains that the beneficiary would be employed solely as an orthopedic shoemaker and designer. He would be required to make the mold and lasts and cut out the leather for the upper parts of the shoe. The United States employment clearance order submitted in support of the petition summarizes the position as follows: "Working from doctors' and institutional prescriptions, will hand last complete orthopedic footwear. From similar prescriptions will progressively alter and repair orthopedic footwear." The salary for the position is $75.00 for a 40-hour week.

The petitioner maintains that there is only one school in the United States to train men for this type of a position and that an extensive local advertising campaign has failed to produce any qualified applicants. The petitioner contemplates opening five additional stores but is prevented from doing so by the lack of competent help.

A comprehensive investigation by the Immigration and Naturalization Service reveals that there is confusion within the industry regarding the use of the terms "orthopedic shoemaker" and "orthopedic shoe repairman" and that the terms are generally used interchangeably. An "orthopedic shoe repairman," however, is conceded to be the lesser skilled position and any good shoemaker can be trained for this position in approximately three to four years. His duties, in addition to the repair and modification of the shoes, also require the ability to cut the leather for the shoe according to a pattern and to place the leather on wooden lasts. He then places the heels and soles on the lasts and sews them together. The "orthopedic shoemaker" is required to make the actual pattern for cutting the leather and to make the wooden lasts according to specifications of the physician. He must also be familiar with the terminology of the trade and with the bone structure of the feet. He is also required to make a metatarsal bar and to convert regular shoes to orthopedic shoes, as well as make various corrections and adjustments, according to the prescription. Since these prescriptions are generally written in English, a knowledge of the English language would be advisable to understand the prescription and the terminology used in the making of orthopedic shoes.

The work of the orthopedic shoemaker is strictly hand work, requiring no special equipment but a high degree of skill. Inquiry was made by this Service of four large orthopedic shoe companies in New York City. Representatives of these companies advised

468

that an apprenticeship of about three to five years, followed by at least five years of experience in the repair and making of orthopedic shoes, is necessary to become a skilled orthopedic shoemaker. Other investigation by this Service has also shown that experience as a shoemaker, not engaged in any orthopedic work, would not develop the necessary skills due to the difference in the type of work performed. Approximately two to two-and-a-half days are required to produce a single pair of orthopedic shoes and they range in price from $75.00 to $200.00. Due to this high price, there is a limited market for this product, and such shoes are produced by a few houses specializing in this type of work. The ordinary neighborhood shoe repair shops in this area have no need for either an orthopedic shoemaker or repairman, and cannot reasonably expect any volume of such business.

Investigation by the Immigration Service in approximately one-half of the petitioner's stores reveals that in all of the stores but one there are no qualified orthopedic shoemakers or orthopedic shoe repairmen employed at all. The petitioner's stores are basically similar to other shoe repair stores in the city and are engaged in the repair of regular footwear. In the one store owned by the petitioner in which orthopedic work is done, approximately two pairs of orthopedic shoes are repaired each month. No evidence has been submitted which would tend to establish that the employment of an orthopedic shoemaker or repairman is necessary in the petitioner's stores presently, or at any future date. As the petitioner's business is preponderantly that of cobbling, doing ordinary heel and sole repairs, it has not been established that there is an urgent need for the services of the beneficiary as required by section 203 (a)(1) of the Immigration and Nationality Act.

The beneficiary of the petition is a 56-year-old Italian male. In support of his qualifications, the following have been submitted: (1) a statement from the local mayor that the beneficiary is employed in orthopedic shoe work and has been employed since 1929; (2) a statement from a physician that he has ordered orthopedic shoes from the beneficiary for various patients for approximately four years; (3) an abstract from the Book of Qualified Artisans listing the beneficiary as an orthopedic shoemaker and designer; (4) two letters from previous employers stating that the beneficiary has been employed by them for many years as an orthopedic shoe worker.

This evidence is deemed insufficient to establish that the beneficiary possesses the skills qualifying him for the position of orthopedic shoemaker and designer. The evidence of record is lacking in specific information as to the nature of the apprenticeship and other training received by the beneficiary. There is no information

469

as to whether the beneficiary's previous employers were exclusively engaged in orthopedic work or whether this work was merely an incidental activity. The beneficiary's experience is vaguely defined in general terms making it impossible to ascertain exactly what his principal duties were. No evidence has been submitted regarding the beneficiary's knowledge of the English language or ability to translate the prescriptions or terminology used in the United States.

Upon careful consideration of the entire record, it is concluded that the petitioner has failed to establish (1) that the beneficiary's services are urgently needed by him in the United States, and (2) that the beneficiary is a highly skilled person.

**ORDER:** It is ordered that the petition be denied.